**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ERIC RICHARDSON** | **CIVIL ACTION** |
| **v.** | **NO. 21-2154** |
| **TRAVIS DAY, WARDEN** | **SECTION: "A"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

## I. State Court Factual and Procedural Background

Petitioner, Eric Richardson, is a state prisoner incarcerated at the B.B. Rayburn Correctional Center in Angie, Louisiana. On April 12, 2017, Richardson was charged by a superseding bill of information with possession of cocaine in violation of La. Rev. Stat. §§ 40:967(F) (count one), possession with the intent to distribute methamphetamine in violation of La. Rev. Stat. § 40:966(A) (count two), possession with the intent to distribute heroin violation of La. Rev. Stat. § 40:966(A) (count three), possession of Tramadol in violation of La. Rev. Stat. § 40:969(C) (count four), and possession of Diazepam in violation of La. Rev. Stat. § 40:969(C)

(count five).[1]  Richardson waived his right to a jury trial.[2]  After a bench trial, Richardson was found guilty as charged.[3]  On May 22, 2018, the trial court sentenced Richardson to 15 years imprisonment at hard labor as to counts one and two, 20 years imprisonment at hard labor as to count three, and five years imprisonment at hard labor as to counts four and five, each sentence to run concurrent.[4]

The state filed a multiple offender bill as to count three.[5]  On that same date, Richardson pled guilty.[6]  The trial court found Richardson to be a second felony offender, vacated his sentence as to count three, and resentenced him as a second felony offender to 25 years imprisonment at hard labor without the benefit of probation or suspension of sentence and to run concurrently with any other sentences he was already serving.[7]

On September 4, 2019, the Louisiana Fifth Circuit Court of Appeal affirmed Richardson's convictions and sentences.[8]  Richardson filed a writ application with the Louisiana Supreme Court which denied relief on July 2, 2020.[9]

---

[1] State Rec., Vol. 1 of 8, Bill of Information dated April 12, 2017.
[2] State Rec., Vol. 1 of 8, Motion to Waive Jury Trial dated January 3, 2018; minute entry dated January 12, 2018; hearing transcript of January 12, 2018.
[3] State Rec., Vol. 1 of 8, minute entry dated April 18, 2018; State Rec., Vol. 2 of 8, trial transcript of April 18, 2018. Richardson was also found guilty of the misdemeanor offense of resisting an officer which was charged in a separate case.  State Rec., Vol. 2 of 8, trial transcript of April 18, 2018.
[4] State Rec., Vol. 1 of 8, minute entry dated May 22, 2018; State Rec., Vol. 2 of 8, sentencing transcript of May 22, 2018.
[5] State Rec., Vol. 1 of 8, multiple bill filed May 22, 2018.
[6] State Rec., Vol. 1 of 8, Waiver of Rights – Plea of Guilty Multiple Offender – La. R.S. 15:529.1 dated May 22, 2018; minute entry dated May 22, 2018; State Rec., Vol. 3 of 8, multiple bill hearing and sentencing transcript of May 22, 2018.
[7] State Rec., Vol. 1 of 8, minute entry dated May 22, 2018; Commitment Order dated May 22, 2018; State Rec., Vol. 3 of 8, multiple bill hearing and sentencing transcript of May 22, 2018.
[8] State v. Richardson, 279 So.3d 501 (La. App. 5th Cir. 2019); State Rec., Vol. 4 of 8.
[9] State v. Richardson, 297 So. 3d 764 (La. 2020); State Rec., Vol. 8 of 8.

Richardson filed an application for post-conviction relief on December 19, 2020.[10]  On February 26, 2021, the state district court denied relief.[11]  Richardson's related writ application to the Louisiana Fifth Circuit was denied on May 19, 2021.[12]  The Louisiana Supreme Court denied his related writ application on October 12, 2021.[13]

In the interim, on March 8, 2021, after the state district court denied Richardson's application for post-conviction relief, Richardson filed a traverse.[14]  On April 23, 2021, the Louisiana Fifth Circuit denied his related writ application requesting that it compel the state district court to rule on his traverse.[15]

On November 5, 2021, Richardson filed the instant federal application seeking habeas corpus relief in which he asserts the following claims for relief[16]: (1) the trial judge was not impartial; (2) the trial court did not have subject matter jurisdiction over the offense of resisting arrest; (3) insufficient evidence supported his convictions where the confidential informant's car was not searched before or after the controlled buy; (4) there was insufficient evidence that he possessed the drugs; (5) ineffective assistance of appellate counsel in failing to raise any substantial errors on appeal; (6) the affidavit in support of the search warrant was (a) based on misrepresentations, and (b) failed to assert that the confidential informant saw Richardson bury any drugs or contraband in his yard; (7) there was a warrantless intrusion into his home and curtilage; (8) he was denied due process and the right to confront the confidential informant; and

---

[10] State Rec., Vol. 4 of 8, Uniform Application for Post-Conviction Relief dated December 19, 2020; State Rec., Vol. 5 of 8, Uniform Application for Post-Conviction Relief dated December 19, 2020 (con't); State Rec., Vol. 6 of 8, Uniform Application for Post-Conviction Relief dated December 19, 2020 (con't).
[11] State Rec., Vol. 6 of 8, Order on Post-Conviction Application of February 26, 2021.
[12] State Rec., Vol. 6 of 8, La. 5th Cir. Order, 21-KH-183, of May 19, 2021.
[13] Richardson v State, 325 So.3d 1052 (La. 2021); State Rec., Vol. 8 of 8.
[14] State Rec., Vol. 6 of 8, Traverse to the State's Procedural Objection to the Petitioner's Pro Se Application for Post-Conviction Relief with Memorandum in Support dated March 8, 2021.
[15] State Rec., Vol. 6 of 8, La. 5th Cir. Order, 21-KH-155, of April 23, 2021.
[16] Rec. Doc. 1.

Detective Whittington's testimony constituted impermissible hearsay; (9) his statement during his unlawful arrest is fruit of the poisonous tree; (10) his Fourth Amendment rights to search and seizure were violated when the knock-and-announce rule was violated.

On February 22, 2022, the state filed its response.[17]  The state concedes that Richardson's application is timely and that his claims are exhausted.  The state contends that some of Richardson's claims, specifically claims one, two, six (b), seven, nine, and ten, are procedurally barred.  The state further contends that Richardson's remaining claims are meritless.

Richardson filed a traverse claiming ineffective assistance of appellate counsel as cause for his procedural default.[18]

## I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

---

[17] Rec. Doc. 9.
[18] Rec. Doc. 10.

determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1705 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to

extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id., at 1706 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein. White, 134 S. Ct. at

1701.

## II. Facts

On direct appeal, the Louisiana Fifth Circuit summarized the facts of this case as follows[19]:

> In October of 2016, Lisa Cassara, a Parole Officer with the Louisiana
> Department of Corrections, Office of Probation and Parole, contacted Detective
> William Whittington of the Narcotics Division of the Jefferson Parish Sheriff's
> Office ("JPSO") to report that one of her parolees – a convicted cocaine distributor
> named Eric Richardson – was frequenting a known "high crime area" in Metairie
> after curfew. Based upon this information, Detective Whittington initiated an
> investigation of Richardson including electronic and traditional surveillance by law
> enforcement officers and interviews with confidential informants.
>
> One of the informants described Richardson and his vehicle and stated that
> Richardson moved "large quantities" of heroin through Jefferson Parish so
> Detective Whittington decided to set up a controlled buy using the CI. On
> November 12, 2016, a team of narcotics enforcement officers from JPSO conducted
> surveillance of Richardson. Detective Gary Bordelon informed the team when
> Richardson drove away from his apartment in Kenner in the white Ford Explorer
> with temporary license plates as described by the CI. Detective Whittington, who
> was waiting with the CI, determined that the CI did not have any contraband in the
> CI's possession before interacting with Richardson.
>
> Detective Whittington observed Richardson arrive at the location where the
> CI had arranged to make the controlled buy. Once at the location, Detective
> Whittington observed Richardson meet and interact with the CI and witnessed,
> based on his training, education, and experience, what Detective Whittington
> believed to be a hand-to-hand drug transaction. After the interaction, Richardson

---

[19] Richardson, 279 So.3d at 506-07; State Rec., Vol. 4 of 8.

left; the CI again met with Detective Whittington and provided Whittington with the heroin that the CI had purchased from Richardson.

Immediately, Detective Whittington prepared an affidavit and search warrant for Richardson's residence and vehicle. Coincidentally, the officers learned during their investigation that there was an outstanding attachment for Richardson. Once the warrants were obtained, the officers approached Richardson outside of his residence with the intent to arrest him on the outstanding attachment. When they made their identity as law enforcement known, however, Richardson fled into his backyard and into his apartment. Although a struggle ensued, Detective Whittington ultimately detained Richardson and read him his rights under Miranda v. Arizona.[1]

[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In the subsequent search of Richardson's residence and car pursuant to the warrant, including a small dirt area of the backyard specifically referred to by the CI, the officers recovered two plastic jars buried in the ground. In the first, there were approximately 78 grams of cocaine, 10 grams of heroin, 20 dosage units of Diazepam, and 5 dosage units of Tramadol. In the second, there were approximately 220 units of methamphetamine. Inside a backyard shed, the officers also recovered a leather satchel containing sandwich bags, a ceramic plate, and three digital scales.[2] Defendant was placed under arrest and read his Miranda rights; thereafter, defendant provided a statement to Detective Whittington admitting ownership of the narcotics and other items seized during the search.

[2] Sergeant Joshua Collins, who the defense stipulated to as an expert in the field of narcotics investigations, packaging, and distribution, concluded that based on the evidence in this case, defendant possessed with the intent to distribute heroin and methamphetamine. Sergeant Collins concluded that the quantity, weight, and dosage units of the variety of types narcotics as well as the packaging of the narcotics in bundles and the presence of numerous digital scales indicates a mid-level distributor of narcotics.

### III. Petitioner's Claims[20]

#### A.    Procedurally Barred Claims (Claims One, Two, Six (b), Seven, Nine & Ten)

The state courts imposed a procedural bar to certain of Richardson's claims. The state district court found Richardson's claims one, two, six (b), seven, nine, and ten procedurally barred because Richardson raised the claims for the first time in his application for post-conviction relief, citing La. Code Crim. P. art. 930.4(B).[21] The Louisiana Fifth Circuit found "no error in the district

[20] For ease of analysis, this Report and Recommendation addresses some of Richardson's claims in a different order than they were listed in his federal application.

[21] State Rec., Vol. 6 of 8, Order on Post-Conviction Application of February 26, 2021, p. 2. The state district court found claims three, four, six (a) and eight procedurally barred because they were fully addressed on appeal. Id. The state correctly notes that the claims were denied by the state district court under Louisiana Code of Criminal Procedure

court's determination that relator's claims were procedurally barred from review pursuant to the provisions of La. C. Cr. P. art. 930.4.[22]  The Louisiana Supreme Court also cited La. Code Crim. P. art. 930.4 in finding Richardson's application "repetitive."[23]

In light of the foregoing rulings, the state argues that these claims are procedurally barred from federal review.  The state is correct.

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  Moreover, "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

Clearly, the procedural rule on which the state courts relied was "independent" and "adequate."  It is well-established that La. Code Crim. P. art. 930.4(B) is an independent and adequate state court ground sufficient to procedurally bar claims from federal habeas review. See, e.g., Holmes v. Vannoy, Civ. Action No. 16-6894, 2018 WL 941712 at *6 (E.D. La. Jan. 11, 2018), adopted, 2018 WL 929602 (E.D. La. Feb. 16, 2018); Poupart v. Tanner, Civ. Action No. 15-1340,

---

article 930.4(A), which is not itself a bar to federal habeas review.  Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir. 1994). The bar does not preclude federal habeas review of claims that were considered on direct appeal.  This Court simply "look[s]-through" the ruling on collateral review and considers only the direct appeal proceeding.  Id. at 1582-83.

[22] State Rec., Vol. 6 of 8, La. 5th Cir. Order, 21-KH-183, of May 19, 2021, at p. 2.

[23] Richardson, 325 So.3d at 1052; State Rec., Vol. 8 of 8.

2016 WL 8813778, at *20 (E.D. La. Apr. 25, 2016), adopted, 2017 WL 1511610 (E.D. La. Apr. 27, 2017); Welch v. Cain, Civ. Action No. 12-38, 2015 WL 1526446, at *7-8 (M.D. La. Apr. 2, 2015); Brown v. Cain, Civ. Action No. 11-2267, 2011 WL 7042222, at *8 (E.D. La. Dec. 20, 2011), adopted, 2012 WL 123288 (E.D. La. Jan. 17, 2012); Thomas v. Cain, Civ. Action No. 11-2408, 2011 WL 6046536, at *5 (E.D. La. Nov. 17, 2011), adopted, 2011 WL 6028779 (E.D. La. Dec. 5, 2011.

Where, as in the instant case, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, Richardson demonstrates neither.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

Richardson raises ineffective assistance of appellate counsel as cause for the procedural default of his claim. Ineffective assistance of counsel may in some circumstances serve as cause to overcome a procedural bar. See Murray, 477 U.S. at 489 "(where an ineffective assistance claim has independently been presented to state courts, it may be used to establish cause for a procedural default)." However, as will be discussed later in this report, Richardson's claims of ineffective assistance of appellate counsel are without merit and do not constitute cause for his default.

Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992); Bella v. Cain, Civ. Action No. 12-2323, 2015 WL 1311216, at *16 (E.D. La. Mar. 23, 2015); Arita v. Cain, Civ. Action No. 11-636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 F. App'x 352 (5th Cir. 2012).

Because the purported ineffectiveness of appellate counsel cannot serve as cause for the default of Richardson's claims, and because Richardson has established no other cause for default of the claims, the Court need not consider whether actual prejudice would result from the application of the procedural bar. Martin, 98 F.3d at 849.

Because Richardson has not met the "cause and prejudice" test, these claims are barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice." In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley, 243 F.3d at 220 (citations omitted). However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Here, Richardson presents no new evidence of innocence, much less any new evidence of the type or caliber referenced in Schlup. Moreover, ample evidence of his guilt was introduced at trial. Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

11

For these reasons, Richardson's claims one, two, six (b), seven, nine, and ten are procedurally barred and should not be considered by this Court.

### B.    Sufficiency of Evidence (Claims Three & Four)

Richardson asserts that the evidence was insufficient to support his convictions. Richardson specifically claims that the evidence was circumstantial and failed to prove the element of possession of the controlled substances beyond a reasonable doubt. The state responds that the state court's denial of relief was neither contrary to nor an unreasonable application of United States Supreme Court precedent.

On direct appeal, the Louisiana Fifth Circuit addressed the sufficiency of the evidence and found as follows[24]:

> When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La. 1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id.; See also State v. Nguyen, 05-569 (La. App. 5 Cir. 2/3/06), 924 So.2d 258, 262. Thus, we will address defendant's *pro se* assignment of error regarding the sufficiency of the evidence first.
>
> In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
>
> In cases involving circumstantial evidence, the trial court must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. The reviewing court is not required to determine whether another

---

[24]Richardson, 279 So. 3d at 508-09; State Rec., Vol. 4 of 8.

possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events.  Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.  State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83; State v. Washington, 03-1135 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 977.

In this case, defendant was convicted of five counts of narcotics possession: possession of cocaine between twenty-eight and two-hundred grams; possession with intent to distribute methamphetamine; possession with intent to distribute heroin; possession of Tramadol; and possession of Diazepam.  Although there are different elements required to support these five crimes, defendant only challenges the State's alleged failure to prove the element of possession beyond a reasonable doubt for each of the counts.

In Louisiana, the element of possession may be established by showing defendant exercised either actual or constructive possession of the substance.  State v. Lewis, 04-1074 (La. App. 5 Cir. 10/6/05), 916 So.2d 294, writ denied, 05-2382 (La. 3/31/06), 925 So.2d 1257.  A person not in physical possession of the drug is considered to be in constructive possession of the drug, even though the drug is not in his physical custody, when it is under that person's dominion and control.  Id. The key factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the defendant's knowledge that illegal drugs were in the area, his relations with a person found to be in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use by the defendant, the existence of drug paraphernalia, and evidence that the area was frequented by drug users.  Id.; State v. Manson, 01-159 (La. App. 5 Cir. 6/27/01), 791 So.2d 749, 761, writ denied, 01-2269 (La. 9/20/02), 825 So.2d 1156.  "Mere presence in an area where drugs are found or mere association with the person in actual possession does not constitute constructive possession."  State v. Jones, 04-1258 (La. App. 5 Cir. 4/26/05), 902 So.2d 426, 431.  However, "[p]roximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence."  Id.

In the instant case, defendant's parole officer reported that his movements, which were electronically monitored, revealed that he was frequenting a high crime area and violating his curfew.  Under surveillance by narcotics officers from JPSO, a confidential informant conducted a controlled buy of heroin from defendant, which gave the officers probable cause to obtain a search warrant for defendant's residence.[5]  After being read his Miranda[6] rights and being informed that a search of the premises would be conducted, defendant admitted, "whatever you find is mine."  The search disclosed approximately 78 grams of cocaine, 10 grams of heroin, 20 dosage units of Diazepam, 5 dosage units of Tramadol, and 221 units of methamphetamine buried in two plastic bottles in a small area of "disturbed dirt" surrounded by grassy area in defendant's backyard.  Inside a nearby shed in the

backyard, the officers also recovered a leather bag containing sandwich bags, a ceramic plate, and three digital scales.

    [5] Defendant's address was confirmed by his parole officer at trial.
    [6] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

    After discovery of the narcotics, defendant was placed under arrest and advised of his Miranda rights.  During his subsequent statement to Detective Whittington, defendant admitted that he alone owned the narcotics and other items seized during the search.  Evidence concerning defendant's prior convictions for possession with intent to distribute heroin and possession of over 28 grams of cocaine was also admitted at trial under La. C.E. art. 404(B).

    Defendant's admissions, coupled with his access to the area where the drugs were found, defendant's prior drug activities, and existence of paraphernalia, are sufficient to satisfy the possession element of the charged offenses.  Thus, based on the testimony presented at trial and the factors discussed in Lewis, supra, we find that the State produced sufficient evidence to show defendant constructively possessed the drugs found in his backyard and, therefore, find the evidence is sufficient under the Jackson standard to support the convictions.

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[25]

Because a claim challenging the sufficiency of the evidence presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Davila v. Davis, 650 F. App'x 860, 866 (5th Cir. 2016), aff'd, 137 S. Ct. 2058 (2017). For the following reasons, the Court finds that he has made no such showing.

In this case, the Louisiana Fifth Circuit Court of Appeal correctly identified the controlling federal law concerning such claims: Jackson v. Virginia, 443 U.S. 307 (1979).  Under Jackson, the question before a court is not "whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.  Instead, the relevant question is whether, after viewing the evidence

---

[25] Richardson, 297 So. 3d at 764; State Rec., Vol. 4 of 8.

in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (citation and quotation marks omitted). In other words, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' " Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (emphasis added) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

In addition, despite Richardson's argument to the contrary, Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 F. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 F. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 566 U.S. at 655 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Lastly, because the Jackson standard is itself deferential, and because the AEDPA's standards of review are also deferential, a federal habeas court's review of a sufficiency of the evidence claim is in fact "twice-deferential." Parker v. Matthews, 567 U.S. 37, 43 (2012); see also

Coleman v. Johnson, 566 U.S. 650, 651 (2012). Further, under the AEDPA, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (quotation marks omitted). As a result, "[b]ecause rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id.

Mindful of these principles, the Court finds that Richardson's claims must be rejected for the following reasons.

Initially, Richardson claims that Detective Whittington failed to search the confidential informant's vehicle before and after the controlled buy. He therefore concludes that there was insufficient evidence to convict him of the charges in this case. Richardson was not charged with the sale of heroin to the confidential informant. Thus, his claim is meritless.

Richardson was charged with and found guilty of possession of cocaine, possession with intent to distribute methamphetamine, possession with intent to distribute heroin, possession of Tramadol, and possession of Diazepam. In Louisiana, it is unlawful for a person knowingly or intentionally to possess with the intent to distribute a Schedule I or II controlled dangerous substance, which includes heroin, methamphetamine and cocaine. La. Rev. Stat. §§ 40:966(A) and 40:967(A)(1); La. Rev. Stat. § 40:964, Schedule I(B)(11) and Schedule II(A)(4) and (C)(2). It is also unlawful for a person to knowingly or intentionally possess a Schedule IV controlled dangerous substance without a valid prescription, which includes Tramadol and Diazepam. La. Rev. Stat. § 40:969(C); La. Rev. Stat. § 40:964, Schedule IV(A)(3) and (B)(16). To support a conviction for possession of a controlled dangerous substance with intent to distribute it, the state

is required to prove both possession and specific intent to distribute it.  See State v. Young, 764 So. 2d 998, 1006 (La. App. 1st Cir. 2000).  Possession exists when the defendant exercised either actual or constructive possession of the cocaine.  State v. Jones, 985 So. 2d 234, 241 (La. App. 5th Cir. 2008).  Actual possession occurs when the person has direct physical contact with and control of the object.  State v. Bright, 860 So. 2d 196, 205 (La. App. 5th Cir. 2003).  A person has constructive possession when the drugs are under his dominion and control even if not on his person.  State v. Manson, 791 So.2d 749, 761 (La. App. 5th Cir. 2001).

Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include the defendant's (a) knowledge that drugs were in the area, (b) relationship with the person found to be in actual possession, (c) access to the area where the drugs were found, (d) recent drug use and (e) physical proximity to the drugs.  State v. Toups, 833 So.2d 910, 912 (La. 2002).  Guilty knowledge, as an essential component of constructive possession, may be inferred from the circumstances of the case.  State v. Pigford, 922 So. 2d 517, 521 (La. 2006).

To prove his possession of the drugs, the state presented the testimony of Detective William Whittington who testified that he obtained a search warrant of Richardson's residence following a controlled buy of heroin by a confidential informant.[26]  Detective Whittington testified he had information that drugs were buried in Richardson's yard prior to the search.[27]  Richardson, after being read his Miranda rights, claimed that no drugs were inside of the house.[28]  When Detective Whittington confronted Richardson about the possibility of drugs buried on the premises,

---

[26] State Rec., Vol. 2 of 8, trial transcript of April 18, 2018, at p. 25.  The defense stipulated that Richardson lived at the residence.  Id., at p. 31.
[27] Id., at pp. 73, 94.
[28] Id., at p. 30.

Richardson "looked down in a defeated manner and stated, whatever you find is mine."[29]  A search of the backyard revealed two bottles buried in the dirt which contained narcotics.[30]  A search of the shed in the yard resulted in the recovery of a satchel which contained numerous sandwich bags, a ceramic plate, and three digital scales.[31]  Whittington testified that Richardson made a recorded statement after he was brought to the Jefferson Parish Investigations Bureau.[32]  Richardson's recorded statement was admitted into evidence and played for the trial judge.[33]

Detective David Lowe testified that he participated in the search of Richardson's yard and collected a dark bag that contained a ceramic plate, three digital scales, and numerous plastic baggies.[34]

Sergeant Robert Blackwell testified that he participated in narcotics investigation involving Richardson in March 2006.[35]  A search of Richardson's residence and a FEMA trailer on the property revealed narcotics, several firearms, a plate with white residue, measuring cups with white residue, and a scale.[36]  Richardson pled guilty to possession of cocaine.[37]

Sergeant Daniel Jewel, Jr., testified that he arrested Richardson for possession with intent to distribute heroin in May 2006, and that he was ultimately convicted of that charge.[38]

---

[29] Id., at pp. 30, 78.

[30] Id., at p. 32.

[31] Id.

[32] Id., at pp. 42-43.

[33] Id., at pp. 43-44.  A transcript of Richardson's interview is not included in the record.  However, according to Whittington's written report, Richardson "claimed ownership of the seized exhibits but tried to convince Detective Whittington that he is a habitual narcotics user.  Towards the end of his interview, Richardson referred to himself as an 'idiot' because he 'messed up'.  Richardson repeatedly stressed that he would never allow another individual to 'take his charge.'"  Rec. Doc. 1-1, at p. 15.

[34] Id., at p. 117.

[35] Id., at p. 104.

[36] Id., at p. 105.

[37] Id.

[38] Id., at pp.101-03.

Sergeant Joshua Collins testified that, in his opinion, the evidence represented possession with the intent to distribute heroin and methamphetamine.[39]  He explained that he came to his conclusion based upon the large quantities of the controlled substances, the manner in which they were packaged, and the presence of three digital scales.[40]

Stated simply, there was sufficient evidence upon which the trial judge could indeed rationally conclude, as explained by the Louisiana Fifth Circuit, that Richardson possessed the controlled substances.  To summarize: when the evidence in the instant case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational. Therefore, Richardson cannot show that the state court's decision rejecting his claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under the doubly deferential standards of review which must be applied by this federal habeas court, Richardson's claims should be denied.

### C.    Denial of Motion to Suppress (Claim Six (a))

Richardson next claims that the trial court erred in denying his motion to suppress. Richardson claims that Detective Whittington made intentional misrepresentations in his affidavit.

Richardson's trial counsel filed a motion to suppress the evidence obtained through the search as well as Richardson's statement.[41]  The trial court held a hearing on the matter on January 12, 2018.[42]  After hearing the testimony and considering the arguments of the parties, the trial court denied the motion to suppress evidence and statement.[43]

---

[39] Id., at p. 141.
[40] Id., at pp. 142-44.
[41] State Rec., Vol. 1 of 8, Motion to Suppress Motion to Suppress Statement filed November 6, 2017.
[42] State Rec., Vol. 1 of 8, hearing transcript of January 12, 2018.
[43] Id., at p. 133.

On direct appeal, the Louisiana Fifth Circuit denied Richardson's claim relating to the denial of the motion to suppress holding[44]:

> In his second *pro se* assignment of error, defendant argues that the trial court erred in refusing to suppress the narcotics confiscated from his backyard, which ultimately led to his convictions. He maintains that the search of his backyard was outside the parameters of the search warrant, which violated his Fourteenth Amendment right. Defendant further contends the warrant itself was deficient as it was based upon information from an unnamed informant with no indication as to the informant's truthfulness or reliability.
>
> During the suppression hearing and at trial, Detective Whittington testified regarding his investigation into defendant's suspected drug activity. At the conclusion of the hearing, defendant argued that the evidence and statement should be suppressed because the warrant was based on information from a CI that lacked credibility and because Detective Whittington had failed to put certain facts from the affidavit into the warrant that supplied the probable cause.
>
> The State, in turn, argued that the information the CI provided concerning defendant was independently corroborated, and the search warrant was validly obtained based on probable cause garnered from the controlled buy between defendant and the CI. The State further maintained that the search warrant was not invalid simply because additional inculpatory information was not placed in the application. After listening to the arguments of counsel, the trial court denied defendant's motions to suppress.
>
> Defendant now raises on appeal two arguments in support of his position that his motion to suppress evidence should have been granted. First, he alleges that the search of his backyard was done in violation of his Fourteenth Amendment right because it was outside the parameters of the search warrant which only provided for the search of his residence. However, defense counsel did not argue this basis for suppression in either his written motion to suppress or at the motion to suppress hearing.
>
> Articulating a new basis for the motion to suppress for the first time on appeal is prohibited under La. C.Cr.P. art. 841, since the trial court would not be afforded an opportunity to consider the merits of the particular claim. State v. Berroa-Reyes, 12-581 (La. App. 5 Cir. 1/30/13), 109 So.3d 487, 496 (citing State v. Harris, 414 So.2d 325 (La. 1982)). Louisiana courts have long held a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress. State v. Montejo, 06-1807 (La. 5/11/10), 40 So.3d 952, 967, cert. denied, 562 U.S. 1082, 131 S.Ct. 656, 178 L.Ed.2d 513 (2010); see also La. C.Cr.P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."); State v.

---

[44] Richardson, 279 So. 3d at 509-12; State Rec., Vol. 4 of 8.

Simmons, 422 So.2d 138 (La. 1982); Harris, supra; State v. Davis, 357 So.2d 1125 (La. 1978); State v. Carter, 10-973 (La. App. 5 Cir. 8/30/11), 75 So.3d 1, writ denied, 11-2060 (La. 2/10/12), 80 So.3d 469 (holding defendant waived the argument that evidence should be suppressed because the search exceeded the scope of the search warrant when the defense counsel never asked the trial judge to rule on the "constitutionally overbroad" issue asserted for the first time on appeal); State v. Brown, 434 So.2d 399 (La. 1983) (rejecting defendant's alternative argument regarding the denial of his motion to suppress because he had not raised the issue at trial); State v. Johnson, 07-1040 (La. App. 4 Cir. 9/10/08), 993 So.2d 326, 330-31, writ denied, 08-2649 (La. 6/5/09), 9 So.3d 868 ("failure to raise a ground for suppressing an item of evidence in a properly filed motion to suppress waives such a basis for exclusion on appeal"); State v. Jackson, 04-1388 (La. App. 5 Cir. 5/31/05), 904 So.2d 907, 911, writ denied, 05-1740 (La. 2/10/06), 924 So.2d 162 (defendant is limited on appeal to the grounds he articulated at trial and a new basis for a claim, even if it would be meritorious, cannot be raised for the first time on appeal). Accordingly, we find that defendant has waived the argument that the evidence should have been suppressed because the location searched was outside of the scope of the warrant.

Second, defendant asserts the warrant itself was deficient because it was lacking in probable cause having been based upon information from an unnamed informant with no indication as to the informant's truthfulness or reliability.

The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Thomas, 08-390 (La. App. 5 Cir. 1/27/09), 8 So.3d 80, 83, writ denied, 09-0626 (La. 11/25/09), 22 So.3d 170. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. Id. A defendant who is adversely affected may move to suppress evidence from the use at the trial on the merits on the ground that it was unconstitutionally obtained. La. C.Cr.P. art. 703(A).

As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. State v. Gaubert, 14-396 (La. App. 5 Cir. 12/16/14), 167 So.3d 110, 114. A search warrant may be issued only upon probable cause established to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized. Id. Probable cause for the issuance of a search warrant exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. Id. The determination of probable cause does not rest on an officer's subjective beliefs or attitudes but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action. Id. A search warrant must establish a probable

21

continuing nexus between the place sought to be searched and the property sought to be seized.  Id.

When evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a hearing on his motion to suppress that evidence.  State v. Falcon, 13-849 (La. App. 5 Cir. 3/12/14), 138 So.3d 79, 88, writ denied, 14-769 (La. 11/14/14), 152 So.3d 877 (citing La. C.Cr.P. art. 703(D)).  A trial court has great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion.  State v. Ables, 16-538 (La. App. 5 Cir. 2/8/17), 213 So.3d 477, 482, writ denied, 17-488 (La. 11/28/17), 230 So.3d 221; State v. Nicholas, 06-903 (La. App. 5 Cir. 4/24/07), 958 So.2d 682, 686.

The task for a reviewing court is simply to ensure that under the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed.  State v. Payne, 10-46 c/w 10-47 (La. App. 5 Cir. 1/25/11), 59 So.3d 1287, 1296, writ denied, 11-0387 (La. 9/16/11), 69 So.3d 1141.  Within its four corners, an affidavit must contain the facts establishing the existence of probable cause for issuing the warrant.  Id.  Moreover, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, the reviewing court should interpret the affidavit in a realistic and common sense fashion, being aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation.  State v. Bonilla, 15-529 (La. App. 5 Cir. 2/24/16), 186 So.3d 1242, 1260, writ denied, 16-0567 (La. 5/2/16), 206 So.3d 881, cert. denied, 512 —— U.S. ——, 137 S.Ct. 239, 196 L.Ed.2d 183 (2016).  Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers.  Id.

At the motion to suppress hearing, Detective Whittington testified that he prepared an affidavit for a search warrant for defendant's residence.  The affidavit for the warrant was presented to Commissioner Patricia Joyce, who after finding probable cause, issued the search warrant.  During the hearing, the affidavit for the search warrant was introduced into evidence, and the trial court listened to the testimony of Detective Whittington regarding the information provided by the CI, which formed the basis of probable cause for the search warrant.

Among the facts provided, it was relayed that Detective Whittington had received information from a reliable and credible CI regarding narcotics trafficking by defendant from his residence at 1600 Newport Place.  The CI provided a description of defendant, his date of birth, and a description of the vehicle he drove.  In the affidavit, Detective Whittington further discussed the CI's firsthand knowledge of defendant's unlawful activities due to having purchased narcotics from him in the past.  Also in the affidavit, Detective Whittington described the controlled buy that took place between the CI and defendant for heroin.  He asserted that defendant had informed the CI during the controlled buy that he was in possession of additional quantities of heroin and should contact him if more was desired.

During the hearing, Detective Whittington discussed in detail his working relationship with the CI, confirming that the CI had previously proven reliable, having provided information to him on prior occasions that led to narcotics arrests. Moreover, Detective Whittington was able to corroborate the information given by the CI regarding the specific type of vehicle defendant drove, where he was residing, and where the narcotics would be located. Under the totality of the circumstances, we find a sufficient basis upon which the trial court could have found probable cause for the issuance of the search warrant in this case. Gaubert, 167 So.3d at 115; State v. Robinson, 03-1350 (La. App. 5 Cir. 3/30/04), 871 So.2d 575, 580, writ denied, 04-1081 (La. 11/15/04), 888 So.2d 767 (citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). And while the veracity, reliability, or basis of knowledge of a CI is relevant in evaluating probable cause, it is not the determining factor. Id.

Accordingly, we find no abuse of the trial court's discretion in denying defendant's motion to suppress the evidence obtained from the execution of the search warrant.

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[45]

To the extent that Richardson argues that the state courts misapplied state evidence law in finding the evidence admissible, his claim simply is not reviewable in this federal proceeding. As the United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).

To the extent that Richardson argues that the search violated *federal* law, his claim fares no better for the following reasons. As the state correctly notes in its response, this Court is barred from reviewing any such Fourth Amendment claim by Stone v. Powell, 428 U.S. 465 (1976).

In Stone, the United States Supreme Court held that where a state provides an opportunity for full and fair litigation of Fourth Amendment claims in the state courts, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence against him was obtained in

---

[45] Richardson, 297 So. 3d at 764; State Rec., Vol. 4 of 8.

an unconstitutional search and seizure. <u>Id.</u> at 494 (footnote omitted); <u>see also</u> <u>Janecka v. Cockrell</u>, 301 F.3d 316, 320 (5th Cir. 2002). Interpreting <u>Stone</u>, the United States Fifth Circuit Court of Appeals has held:

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, <u>Stone v. Powell</u> bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

<u>Caver v. Alabama</u>, 577 F.2d 1188, 1192 (5th Cir. 1978). Therefore, the <u>Stone</u> bar applies even in those cases where no motion to suppress was ever filed. <u>Id.</u> at 1192-93. The <u>Stone</u> bar further applies even if the state court rulings on the Fourth Amendment claims were erroneous. <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324 (5th Cir. 1978).

    <u>Stone</u> clearly applies here. As an initial matter, the Court notes that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." <u>Bailey v. Cain</u>, Civ. Action No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007). Moreover, Richardson in fact availed himself of that opportunity. The state court record shows that defense counsel filed a motion to suppress, Richardson's Fourth Amendment claims were fully litigated and denied after a hearing, and the claim was asserted, considered, and again denied on direct review. Because Richardson was afforded a full and fair opportunity to litigate his Fourth Amendment claim in state courts, <u>Stone</u> bars this Court from considering that claim. <u>Cardwell v. Taylor</u>, 461 U.S. 571 (1983); <u>Jones v. Johnson</u>, 171 F.3d 270, 278 (5th Cir. 1999); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *18 (E.D. La. Dec. 11, 2008).

    For all of these reasons, Richardson has not established that his claim is cognizable on federal habeas corpus review or that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, this claim should be denied.

### D.    Violation of Due Process & the Right to Confrontation (Claim Eight)

Richardson claims that he was denied due process and the right to confront his accuser because the confidential informant, whose identity was not disclosed, was the sole participant in the controlled buy with Richardson, but did not testify at trial.  He further claims that testimony by Detective Whittington relating to the confidential informant constituted impermissible hearsay in violation of Crawford v. Washington, 541 U.S. 36 (2004).

On appeal, the Louisiana Fifth Circuit Court of Appeal denied Richardson's claim that the trial court erred in denying his request to disclose the identity of the confidential informant, holding[46]:

> Returning to defendant's counseled assignments of error, we will address the first and second assignments of error, which are related, together.  In them, defendant argues that he was denied his right to confront his accusers and his right to present a defense as a result of the trial court's failure to disclose to him the identity of the CI or, at a minimum, conduct an *in camera* inspection of the CI to determine the CI's reliability.  Defendant argues that there was no independent source other than the CI for the information that led to the discovery of the narcotics, which formed the basis for the charged offenses.  Defendant maintains that the search warrant was based wholly upon the alleged controlled buy that occurred between himself and the CI and that the buy was not directly witnessed by any police officer or otherwise corroborated.  Accordingly, defendant concludes the credibility of the CI was integral to the State's case and without means to confront the CI or assess his credibility, the State was permitted to circumvent constitutional safeguards to obtain the convictions against defendant.

> As previously noted, a suppression hearing was held prior to trial.  During that hearing, Detective Whittington testified that he was initially contacted by defendant's parole officer regarding suspicious activity recorded by defendant's electronic tracking device.  Narcotics officers conducted brief surveillance of defendant but did not observe illegal activity.  Detective Whittington recalled that a short time later he received information from a CI that defendant was "distributing quantities of heroin throughout Metairie."  According to Detective Whittington, he had worked with the CI in the past and confirmed that the CI had previously proven reliable, having provided information on prior occasions that led to arrests and narcotics seizures.  The CI further informed Detective Whittington of the specific type of vehicle defendant drove and where he was residing.  The CI indicated that

---

[46] Richardson, 279 So. 3d at 512-16; State Rec., Vol. 4 of 8. .

he/she was in a position to purchase a quantity of heroin from defendant, so Detective Whittington set up the CI to conduct a controlled buy.

Detective Whittington explained that after setting up surveillance on defendant's residence, defendant was observed leaving the premises in the vehicle described by the CI. Then, after following defendant to the pre-determined location, the CI met with defendant and obtained a quantity of heroin, which the CI then relinquished to Detective Whittington. Detective Whittington testified that he searched the CI both before and after the controlled buy to ensure the CI was not in possession of any illegal items. The detective was also able to continuously view the CI from the time the CI left him until the time the CI met with defendant, noting that the CI did not interact with any other person.

After the controlled buy, the CI contacted Detective Whittington to provide him with defendant's address while other officers from the team followed defendant back to his residence. In the meantime, Detective Whittington obtained a search warrant for defendant's residence and vehicle. During the execution of the warrant, narcotics were found buried in defendant's backyard in a location where the CI, who was familiar with defendant's home, had indicated the contraband had been located.

On cross-examination, defense counsel asked Detective Whittington how much money was given to the CI to use during the controlled buy. Detective Whittington stated that such information would reveal the identity of the informant; thus, he was instructed by the trial court not to answer. Defense counsel then indicated that he would be filing a motion for *in camera* inspection requesting the trial judge to meet with the CI and engage in a colloquy with him/her about the information he/she provided to Detective Whittington so as to determine his/her credibility and/or existence.

Accordingly, after the trial court's ruling denying the motions to suppress, defendant filed a motion for *in camera* inspection to determine the reliability of the CI. The defendant filed a pro se motion to reveal the identity of the CI, asserting that the CI participated in the alleged criminal transaction and that non-disclosure of the CI's identity would deny him his constitutional rights of confrontation and compulsory process.

At the hearing on these motions, the State argued there was no basis to disclose the identity of the CI in this case. It noted that defendant was not charged with distribution of the narcotics sold to the CI during the controlled buy, and that as a result, there existed no exceptional circumstances warranting the exposure of the CI's identity or for an *in camera* inspection to test the CI's credibility.

In response, defendant maintained that the CI played a crucial role in the case and admitted that while defendant was not charged with the offense of distribution of the narcotics to the CI, the controlled buy between defendant and the CI formed

the basis for the search warrant. Accordingly, defendant argued an *in camera* inspection should be conducted with the CI to gauge the CI's credibility. Defendant averred that if the trial court were to engage in a colloquy with the CI, it could determine whether the CI was truthful and whether a controlled buy had, in fact, taken place. The trial court denied the motion to disclose the identity of the CI and defendant's request for an *in camera* inspection.

Absent exceptional circumstances, a confidential informant's identity is strictly privileged. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. Oliver, 430 So.2d 650, 652-53 (La. 1983), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); State v. Clark, 05-61 (La. App. 5 Cir. 6/28/05), 909 So.2d 1007, 1014 n.18, writ denied, 05-2119 (La. 3/17/06), 925 So.2d 538 (citing State v. Broadway, 96-2659 (La. 10/19/99), 753 So.2d 801, 815, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000)). Established jurisprudence recognizes the "informer's privilege," which allows the state to withhold the identity of those who furnish information of illegal activities to law enforcement officers. Roviaro, 353 U.S. at 59, 77 S.Ct. at 627; State v. Davis, 411 So.2d 434, 436 (La. 1982); see also La. C.E. art. 514.[7] This privilege is founded upon public policy and seeks to further and protect the public interest and law enforcement by encouraging people to supply information to the police by protecting their anonymity. Clark, 909 So.2d at 1014-15, 1015 n.19 (citing Roviaro, 353 U.S. at 59, 77 S.Ct. at 627).

[7] La. C.E. art. 514(A), pertinent to the issues presented herein, provides:

> The United States, a state, or subdivision thereof has a privilege to refuse to disclose, and to protect another from required disclosure of, the identity of a person who has furnished information in order to assist in an investigation of a possible violation of a criminal law.

However, exceptions to this privilege exist. See La. C.E. art. 514(C).[8] The identity of an informant should be made known to the accused only when his right to prepare his defense outweighs the need for protection of the flow of information. Clark, 909 So.2d at 1015 n.20 (citing State v. Zapata, 97-1230 (La. App. 5 Cir. 5/27/98), 713 So.2d 1152, 1158, writ denied, 98-1766 (La. 11/6/98), 727 So.2d 443). The burden is on the defendant to show exceptional circumstances warranting disclosure of the name of a confidential informant. Clark, 909 So.2d at 1015. The trial court is vested with great discretion in determining when circumstances warrant disclosure. Id.; Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151 (1938).

[8] La. C.E. art. 514(C)(3) states that no privilege shall be recognized if "[t]he party seeking to overcome the privilege clearly demonstrates that the interest of the government in preventing disclosure is substantially outweighed by exceptional circumstances such that the informer's testimony is essential to the preparation of the defense or to a fair determination on the issue of guilt or innocence."

Only when an informant has played a crucial role in the criminal transaction and when he alone can give testimony necessary to insure a fair trial, ***must*** the trial court order disclosure of his identity. State v. Coleman, 97-2802 (La. 4/24/98), 713

So.2d 440, 441-42; <u>State v. Dotson</u>, 260 La. 471, 256 So.2d 594, 599-600 (1971), <u>cert. denied</u>, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972). Conversely, when an informant only supplies information, and does not participate in the transaction, disclosure is not warranted. <u>Clark</u>, 909 So.2d at 1015, n.24 (citing <u>Zapata</u>, <u>supra</u>).

In <u>Clark</u>, <u>supra</u>, the trial court denied the defendant's pretrial motion to reveal the identity of the informant. This Court found that the trial court had not erred in denying the motion because although the CI's drug purchase supplied the probable cause necessary to obtain the search warrant, the informant's participation was not integral to the transaction (i.e., the search) that uncovered the cocaine that was the basis for the instant charge. This Court explained that the defendant was not charged with the distribution of the cocaine to the CI but with possession of cocaine with intent to distribute that occurred on a later date.

In <u>State v. Smith</u>, 09-259 (La. App. 5 Cir. 11/24/09), 28 So.3d 1092, <u>writ denied</u>, 10-1414 (La. 6/24/11), 64 So.3d 212, the defendant argued on appeal that the trial court erred in restricting his ability to test the affidavit of the search warrant, which he alleged relied exclusively upon the credibility of an informant. He further argued that in order to test the affidavit, it was essential to test the informant's credibility, thus, concluding that the trial court's failure to order disclosure of the informant's identity based on the exceptional facts of the case was error. This Court disagreed, noting that the affiant of the probable cause affidavit and search warrant had observed the transaction between the defendant and the CI firsthand. Further, this Court found the defendant did not present exceptional circumstances requiring disclosure, explaining that the cocaine found when the search warrant was executed, and not the evidence seized from the controlled buy between the defendant and the CI, formed the basis for the charged offense. This Court also noted that while the CI was a source of the basis of the probable cause required for the search warrant, that fact did not, in and of itself, require disclosure of the informant's identity. Accordingly, this Court concluded the CI did not play a crucial role in the transaction that led to the defendant's arrest because he played no part in the execution of the search warrant and the search of the defendant's person.

Finally, in <u>State v. Baker</u>, 15-401 (La. App. 5 Cir. 11/19/15), 179 So.3d 895, <u>writ denied</u>, 15-2350 (La. 4/22/16), 191 So.3d 1046, the defendant argued on appeal that the trial court erred in not revealing the identity of the CI who participated in a hand-to-hand transaction with the defendant days before his arrest. This Court found the defendant failed to show that he was entitled to know the identity of the CI and that the charges in the case were based on the evidence found when the officers arrested the defendant on his outstanding attachments, not on the evidence seized from the controlled buy between the defendant and the CI. This Court further noted that the officer testified that he personally observed the controlled buy between the informant and the defendant.

Based on the foregoing, we find that the trial court did not err in finding that the defendant was not entitled to know the identity of the CI, even though the CI was a source of the basis of the probable cause required for the search warrant. The

charges in this case were based on the narcotics found when the search warrant was executed and not based on the evidence seized from the controlled buy between defendant and the CI. Here, the CI did not play a crucial role in the transaction that led to defendant's arrest because the CI played no part in the execution of the search warrant. Accordingly, defendant has not presented exceptional circumstances that required disclosure of the CI's identity, and as such, the trial judge did not err in disallowing the disclosure of the CI's identity.

Further, we find no basis in the law for defendant's motion to conduct an *in camera* inspection with the CI to ascertain the CI's reliability. While the *in camera* inspection of certain documents have been ordered under certain circumstances involving privileged information, we find the *in camera* inspection of a CI to be outside the scope of what defendant is entitled to under the rules of criminal procedure. No jurisprudence could be located and defendant fails to cite to any case where the CI was produced for an *in camera* interview with the trial court in order to verify his/her credibility. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for an *in camera* inspection to independently ascertain the reliability of the CI.

[9] See State v. Cobb, 419 So.2d 1237 (La. 1982); State v. Perkins, 03-1680 (La. 6/27/03), 852 So.2d 989; State v. Smith, 01-1027 (La. App. 1 Cir. 2/15/02), 809 So.2d 556; State v. Berry, 95 1610 (La. App. 1 Cir. 11/8/96), 684 So.2d 439, writ denied, 97-0278 (La. 10/10/97), 703 So.2d 603.

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[47]

Initially, under both federal and state law, the prosecution is not required to disclose the identity of an informant unless the informant's identity is relevant and helpful to the defense of the accused or is essential to a fair determination of the trial. Roviaro v. United States, 353 U.S. 53, 59-63 (1957); United States v. Edwards, 133 F. App'x 960, 962 (5th Cir. 2005); State v. Coleman, 713 So.2d 440 (La. 1998). Here, the state appellate court reasoned that there were no circumstances warranting disclosure of the confidential informant's identity.

Richardson has offered nothing to show how the confidential informant's testimony might have helped in his defense. As the court of appeal noted, the information supplied by the confidential informant to detectives was used only to secure the search warrant for the premises;

---

[47] Richardson, 297 So. 3d at 764; State Rec., Vol. 4 of 8.

it did not provide the basis for Richardson's arrest or conviction for possession of narcotics or possession with the intent to distribute the narcotics. His arrest and conviction was based on the illicit substances and paraphernalia found on the property of his residence, the direct testimony of the detectives, and Richardson's voluntary admission of guilt, not the identification or information supplied by the confidential informant in connection with the prior controlled buy for which no criminal charges resulted. Because the drug transaction with the confidential informant did not form the basis of the charges against Richardson in this case, he fails to show how the confidential informant's identity or testimony would have aided his defense at trial.

As indicated, Richardson also claims that portions of Detective Whittington's testimony constituted impermissible hearsay. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Confrontation Clause therefore prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004). Crawford indicated that testimonial statements include "ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." Id. at 51 (internal quotation and citation omitted); see generally Bullcoming v. New Mexico, 564 U.S. 647, 658 (2011) (recognizing the Crawford standard as the controlling doctrine of the Court).

Initially, the majority of the testimony Richardson cites to was given by Whittington during the suppression hearing.[48] However, Louisiana law provides that "hearsay rules do not apply in

---

[48] See Rec. Doc. 1, at pp. 51-53.

hearings on motions to suppress evidence." State v. Shirley, 10 So.3d 224, 228 (La. 2009); State v. Turner, 13 So.3d 695, 703-704 (La. App. 5th Cir. 2009) ("[H]earsay testimony is admissible in a motion to suppress hearing.").

Further, Crawford did not involve a pretrial suppression hearing, and there is no Supreme Court precedent holding that the Confrontation Clause applies in pretrial suppression hearings."[49] As a result, there is no basis for finding that the state court decision denying the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  As the United States Supreme Court has explained, where its "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  Cf. United States ex rel. Thomas v. Gaetz, 633 F. Supp.

---

[49] As the United States Tenth Circuit Court of Appeals has noted: "There is no binding precedent from the Supreme Court or this court concerning whether Crawford applies to pretrial suppression hearings." United States v. Garcia, 324 F. App'x 705, 708 (10th Cir. 2009).  The Tenth Circuit went on to note:

> To the extent that we can divine clues from our case law concerning the resolution of this issue, they do not benefit Mr. Garcia.  See United States v. Miramontes, 365 F.3d 902, 904 (10th Cir. 2004) (decided after Crawford, but without citing it, holding that "hearsay [testimony] is admissible at a hearing on a motion to suppress and should have been considered by the district court"); cf. United States v. Bustamante, 454 F.3d 1200, 1202 (10th Cir. 2006) ("Crawford concerned the use of testimonial hearsay statements at trial and does not speak to whether it is appropriate for a court to rely on hearsay statements at a sentencing hearing." (emphasis added) ).

Moreover, apparently few federal courts have squarely addressed the issue.  See, e.g., United States v. Morgan, 505 F.3d 332, 338 (5th Cir. 2007) ("[T]he Fifth Circuit has not decided whether Crawford applies to pretrial proceedings and determinations...."); Francischelli v. Potter, No. 1:03-CV-6091-ENV, 2007 WL 776760, at * 10 (E.D.N.Y. Mar. 12, 2007) ("[T]he Court can find no authority applying Crawford to a suppression hearing.").  And Mr. Garcia can find little solace in the rulings of those courts that have definitively spoken.  See, e.g., Washburn v. United States, No. 3:05-CV-774 RM, 2006 WL 3715393, at *4 (N.D. Ind. Dec. 14, 2006) (noting that Crawford's applicability to pretrial suppression hearings is "an issue of first impression" in the Seventh Circuit and finding that defendant's "reliance on Crawford is misplaced"); United States v. Thompson, No. 4:05CR00161 HEA(AGF), 2005 WL 3050634, at *6 (E.D. Mo. Nov. 14, 2005) (rejecting Crawford's alleged applicability to a pretrial suppression hearing, noting "Crawford does not change the long-standing prior precedent that permits the use of hearsay in preliminary proceedings dealing with the admissibility of evidence").

Garcia, 324 F. App'x at 708-09.

2d 645, 657 (N.D. Ill. 2009) ("Because the Supreme Court has not held that <u>Crawford</u> applies to pre-trial hearings, it cannot be said that the appellate court's decision was contrary to, or an unreasonable applicable of clearly established federal law.").

Richardson also points to a portion of Detective Whittington's trial testimony wherein he explained that his investigation of Richardson continued because he received information from a confidential informant that the CI was in a position to purchase a quantity of heroin from Richardson.[50]  That testimony, however, was elicited by defense counsel and not objected to by defense or the prosecution.

It has been established that a petitioner forfeits his claim of a Confrontation Clause violation if he fails to object to the inadmissible hearsay testimony on confrontation grounds.  <u>See</u> <u>Moya v. Sullivan</u>, No. CV 07-01598 VAP (AN), 2010 WL 1023940, *8 (C.D. Cal. Jan. 22, 2010), <u>adopted</u>, 2010 WL 1023943 (C.D. Cal. Mar. 16, 2010) (failure to object in the trial court on confrontation grounds prevents State from attempting to overcome objection by producing absent declarant). Therefore, there is no grounds for review of the instant claim.

Even if Richardson were entitled to review as to his claim as it relates to Whittington's trial testimony elicited by defense counsel, there would still not be a showing of prejudice enough to warrant habeas relief.  Confrontation Clause errors are subject to harmless error analysis.  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 653 (1993) (citing <u>Coy v. Iowa</u>, 487 U.S. 1012, 1021-1022 (1988)). Therefore, the issue to be resolved is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." <u>Kotteokos v. United States</u>, 328 U.S. 750, 776 (1946).

Richardson cannot show the admission of the hearsay statements through Detective Whittington had a "substantial and injurious" effect on the verdict in light of the his own admission

---

[50] Rec. Doc. 1, at pp. 53-54.

that the controlled substances found in the yard belonged to him. Ricardson is not entitled to habeas corpus relief based upon the alleged violation of his right to confrontation by virtue of the admission of hearsay statements through the testimony of Detective Whittington.

E.      **Ineffective Assistance of Counsel (Claim 5 and Cause for Procedural Default)**

Richardson claims that he received ineffective assistance of his appellate counsel when his counsel failed to raise any substantial errors on appeal. Construed broadly, Richardson appears to claim that his appellate counsel should have raised issues regarding the trial judge's partiality, the trial court's jurisdiction over his resisting arrest charge, and the search of his home and property and his statement to detectives.

Richardson raised his claims of ineffective assistance of appellate counsel in his application for post-conviction relief. The state district court, in denying the claims, found as follows:

> On the remaining claim of ineffective assistance of appellate counsel, the state argues, and the court agrees, that the claim is procedurally barred and in addition, meritless. Procedurally, the claim is defective because it fails to state "the grounds upon which relief is sought, specifying with reasonable particularity the factual basis," as mandated by LSA-C.Cr.P. art. 926(E). Similarly, a petitioner must state with reasonable particularity the factual basis for such a claim. LSA-C.Cr.P. art. 926(B)(3).

> Even if the court were to reach the merits, relief would not be warranted. In this case, the petitioner cannot show either prejudice or deficiency in appellate counsel.

> In reviewing claims of ineffective assistance of counsel on direct appeal, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the defendant." Evitts v. Lucey, 469 U.S. 387, 394 (1985). The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues. Jones v. Barnes, 463 U.S. 745 (1983). This is true even where the weaker arguments have merit. Id. at 751-2.

> When the claim of ineffective assistance of appellate counsel is based on the failure to raise the issue on appeal, the prejudice prong of the Strickland test

requires the petitioner to establish that the appellate court would have granted relief, had the issue been raised.  United States v.Phillips, 210 F.3d 345, 350 (5 Cir. 2000).

The defendant received a fair trial with accurate results.  He received full appellate review with no reversible errors found.  His application for post-conviction relief contains barred claims, and furthermore, he fails to meet his burden under LSA-C.Cr.P. art. 930.2 that relief should be granted.[51]

The Louisiana Fifth Circuit found:

Further, we have reviewed the merits of relator's allegations of ineffective assistance of appellate counsel in light of his claim that counsel's failure to raise certain issues on appeal, which were objected to in the district court and preserved for appellate review, should not impose a procedural bar to him to raise these claims in his APCR.  In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court held that a defendant asserting an ineffective assistance claim must show that defense counsel's performance was deficient and that the deficiency prejudiced the defendant.  In the appellate context, the prejudice prong of the Strickland test requires a showing that the appellate court would have granted relief had the issue been raised.  United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000); State v. Kent, 15-323 (La. App. 5 Cir. 10/28/15), 178 So.3d 219, 232, writ denied, 15-2119 (La. 12/16/16), 211 So.3d 1165.

Having reviewed relator's ineffective assistance of appellate counsel claim, we agree with the district court's assessment that relator failed to prove that appellate counsel's performance was deficient or that he was prejudiced by counsel's failure to raise certain issues on appeal.  We specifically note that in support of his ineffectiveness claim, relator included several letters from appellate counsel in which she responds to his suggestions for claims to raise on appeal.  A review of the letters reveals that appellate counsel addressed the issues raised by relator and explained why such claims would not likely warrant relief.  The law is clear that an attorney need not advance every argument, regardless of merit, urged by appellant.   Experienced advocates have empathized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most, on a few key issues.  State v. Castillo, 13-552 (La. App. 5 Cir. 10/29/14), 167 So.3d 624, 653, writs denied, 14-587 (La. 11/7/14), 152 So.3d 172 and 14-2567 (La. 9/18/15), 178 So.3d 145.

Further, appellate counsel advised realtor that if he disagreed with her assessment of the issues, he had the right to file a pro se brief in this matter, which he did.  Lastly, appellate counsel filed a thorough brief in relator's appeal, setting forth the issues that counsel apparently believed presented the best chance for a successful outcome.  Given these circumstances, we find no error in the district

---

[51] State Rec., Vol. 6 of 8, Order, 2/26/21, at pp. 1-2.

court's finding that relator failed to prove that his appellate counsel was ineffective for failing to raise certain claims on appeal.[52]

The Louisiana Supreme found that Richardson failed to show that he received ineffective assistance of counsel under the Strickland standard.[53]

Here, the state courts correctly identified the clearly established federal law governing ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668, 697 (1984). Strickland established a two-part test for evaluating such claims. Specifically, a petitioner seeking relief on such a claim is required to show *both* that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Id. at 697. The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must consider the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of

---

[52] State Rec., Vol. 6 of 8, La. 5th Cir Order, 21-KH-183, of May 19, 2021, at pp. 2-3.
[53] Richardson, 325 So.3d at 1052; State Rec., Vol. 8 of 8.

counsel's conduct.' " Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel. To prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. Briseno, 274 F.3d at 210.

In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the [ ] defendant." Evitts v. Lucey, 469 U.S. 387, 394 (1985). Thus, appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996). Further, failing to raise every meritorious claim on appeal does not make counsel deficient. Green v. Johnson, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing Ellis v. Lynaugh, 873 F.2d 830, 840 (5th Cir. 1989)). Similarly, failing to raise a frivolous claim "does not cause counsel's performance to fall below an objective level of reasonableness." Id. at 1037. Courts give great deference to professional appellate strategy and applaud counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues...." Jones v.

Barnes, 463 U.S. 745 (1983).  This is true even where the weaker arguments have merit.  Id. at 751–2.  Far from evidencing ineffectiveness, an appellate counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions."  Id. at 753.  As a result, when assessing a claim alleging ineffective assistance of appellate counsel, the court looks to whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal.  See, e.g., Diaz v. Quarterman, 228 F. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000).

In the instant case, appellate counsel raised three claims: (1) the trial court erred by denying the motion to reveal the identity of the confidential informant; (2) the trial court erred by denying the motion for an *in camera* inspection of the confidential informant; (3) the evidence was insufficient to support the conviction for resisting arrest.  Although the state courts ultimately denied those claims, they were not frivolous – and, more importantly, the claims Richardson now proposes were certainly no stronger, and, therefore, he cannot show he was prejudiced by their omission for the following reasons.

Richardson identifies six claims that he argues should have been presented on appeal: (1) the trial judge was not impartial; (2) the trial court lacked jurisdiction over the charge of resisting an officer as there was no charging instrument; (3) the affidavit in support of the search warrant was patently defective because it failed to assert that the confidential informant saw Richardson bury drugs or contraband in his yard; (4) the warrantless intrusion into Richardson's home and curtilage was illegal; (5) his statement constitutes fruit of the poisonous tree as it was made during an unlawful arrest; and (6) violation of the knock-and-announce rule.

By letter dated March 21, 2019, Richardson's appellate counsel explained that she raised the "best arguments available" to him and addressed why she did not raise some of the issues raised by Richardson.[54] She explained that the search was based upon a warrant and there was no inherent illegality in the use of the confidential informant, therefore, the fruit of the poisonous tree doctrine would not apply.[55] Appellate counsel advised that Richardson had the right to file a pro se brief if he disagreed with her assessment.[56]

As noted by the Louisiana Fifth Circuit, Richardson had the opportunity to raise these issues in his pro se supplemental brief filed on direct appeal. Richardson instead raised two other issues: (1) the evidence was insufficient to support his convictions; and (2) the trial court erred in denying his motion to suppress because (a) the backyard was outside the parameters of the search warrant and (b) the warrant was deficient because it lacked probable cause as it was based on information from a confidential informant with no indication as to the CI's truthfulness or reliability. Notably, Richardson did not raise any issue relating to his conviction for resisting arrest, the partiality of the trial judge, or the other suppression claims he now raises. Nor does he provide any reason why he failed to do so.

In any event, for the reasons that follow, Richardson has failed to show that the issues he now raises were clearly stronger than those raised by appellate counsel or any resulting prejudice.

Richardson first claims that his appellate counsel should have raised an issue on appeal regarding the trial judge's partiality. Richardson claims the trial judge took a personal interest in the prosecution and acted as both a judge and the prosecutor. Richardson points to the following

---

[54] State Rec., Vol. 6 of 8, letter from appellate counsel dated March 21, 2019.
[55] Id.
[56] Id.

comments made by the trial judge at the suppression hearing during defense counsel's cross examination of Detective Whittington which he claims shows judicial bias:

> MR. CAPASSO:        Okay.  I'll try to be as clear as I can.
>
> THE COURT:        They're vague.  They're ambiguous.  And so every time I hear one that's vague or ambiguous, if the State does not object, I'm going to order the witness not to answer because if I don't understand what you're asking, I don't understand what he's responding to.  Okay.[57]
>
> ***
>
> THE COURT:        Asked and answered.  If I hear something that's already been asked – if the State does not object – then I'm going to Object, Mr. Capasso, because I won't hear the same question rephrased 10 different ways.[58]
>
> ***
>
> THE COURT:        Objection sustained.  Ask your next question.
>
> MR. CAPASSO:        Note our objection.
>
> THE COURT:        Objection is noted.[59]
>
> ***
>
> MR. CAPASSO:        And you saw them together in the car?  Did the confidential informant get in his car?
>
> THE COURT:        You don't have to answer that.
>
> MR. POPVICH:        Objection to relevance.
>
> MR. CAPASSO:        Wow.  The Judge said that.  Okay.
>
> THE COURT:        Yes, sir.
>
> BY MR. CAPASSO:  What –
>
> THE COURT:        You know, Mr. Capasso.  You keep digging and digging and digging, you're trying to find out the identity of the confidential informant, and whenever you ask the question in regards to that before the State can object, if I see

---

[57] Rec. Doc. 1, at p. 13 (citing trial transcript of January 12, 2018, at p. 57).
[58] Id. (citing trial transcript of January 12, 2018, at p. 60).
[59] Id. (citing trial transcript of January 12, 2018, at p. 61).

where you're going, then I am going to object for them, and I'm doing to direct this witness not to answer that question. Okay.

MR. CAPASSO:        Okay, Judge.

THE COURT:        Just so you know what's happening and why I'm telling the witness not to answer. He doesn't have to answer that question.

MR. CAPASSO:        In 20 years, Judge, I've never been accused of this, but I want to know.

THE COURT:        Oh?

MR. CAPASSO:        I have no intention of knowing anything about this person. I – I absolutely will continue to make my questions so that I'm seeing if there is a credibility issue of whether this meeting ever occurred at all.[60]

Both federal and Louisiana law presume that trial judges act fairly and impartially, and the burden is on the defendant to prove otherwise. See Bigby v. Dretke, 402 F.3d 551, 558 (5th Cir. 2005) (citing Bracy v. Gramley, 520 U.S. 899, 909 (1997)); State v. White, 968 So.2d 901 (La. App. 2d Cir. 2007). Notably, judicial rulings alone almost never constitute a valid basis for a bias or partiality argument. See Liteky v. United States, 510 U.S. 540, 555 (1994); Earles v. Ahlstedt, 591 So. 2d 741, 746 (La. 1st Cir. 1991) ("adverse rulings alone do not show bias or prejudice.").

The record instances cited by Richardson simply do not prove presumptive bias. Rather, the trial judge was exercising control over the questioning of the witness during the suppression hearing, as she was permitted to do pursuant to La. Code Evid. art. 611.[61] Richardson fails to

---

[60] Id. (citing trial transcript of January 12, 2018, at pp. 85-86).
[61] La. Code Evid. art. 611(A) provides:

    **A. Control by court.** Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses. The court, however, shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:

    (1) Make the interrogation and presentation effective for the ascertainment of the truth;

    (2) Avoid needless consumption of time; and

    (3) Protect witnesses from harassment or undue embarrassment.

demonstrate how the trial judge's exercise and control of the nature of the questions presented established a genuine question of impartiality.  Nor does the record reflect any actual bias on the part of the trial judge merely because she ruled against defense counsel or corrected him on occasion.  As a result, Richardson has not shown that his appellate counsel was ineffective in failing to raise an issue of bias or any resulting prejudice.

Richardson next asserts that his appellate counsel was ineffective in failing to raise a claim that the trial court lacked jurisdiction as to the misdemeanor charge.  He claims that the state did not file a bill of information charging him with the offense of resisting an officer.[62]

Contrary to his claim, Richardson was in fact charged by a separate bill of information in a different case with a misdemeanor offense of resisting an officer.[63]  While the two cases were tried together, as noted by the Louisiana Fifth Circuit, "[t]he proper procedure for seeking review of a misdemeanor conviction is an application for writ of review seeking exercise of this Court's supervisory jurisdiction.  La. C.Cr. P. art. 912.1(C)(1)."  Richardson, 279 So. 3d at 516 n. 10; State Rec., Vol. 4 of 8.  Notably, Richardson indicated in his habeas petition that he was challenging his drug convictions in case number 16-6969.[64]  His misdemeanor conviction in case number 16-7309 is not properly before the Court.

Richardson next appears to claim that his appellate counsel was ineffective in failing to raise on appeal the fact that Detective Whittington did not include information in his affidavit that the confidential informant advised that Richardson buried controlled substances in his yard.  At the hearing on the motion to suppress, defense counsel argued that Detective Whittington failed to

---

[62] Rec. Doc. 1, at p. 17.
[63] See Richardson, 279 So.3d at 516; State Rec., Vol. 4 of 8.  While Richardson's felony and misdemeanor offenses were tried together, the state court record does not include Richardson's misdemeanor case file.
[64] Rec. Doc. 1, at p. 1.

include in his affidavit in support of the search warrant that the confidential informant claimed that Richardson hid drugs in the yard.[65]  Therefore, the issue was preserved for appeal.

At the suppression hearing, Detective Whittington testified that, towards the end of the investigation, the confidential informant told him that Richardson hid drugs in his backyard.[66] Detective Whittington explained that he did not include that information in his affidavit in support of the application for a search warrant because he believed "the probable cause was based off the buy" and he did not think that "those details needed to be in the affidavit itself."[67]

An affidavit supporting a search warrant is presumed to be valid.  Franks v. Delaware, 438 U.S. 154 (1978); State v. Brannon, 414 So.2d 335, 337 (La.1982).  Where facts are omitted from an affidavit in support of an application for a search warrant with no intent to deceive, the court "must consider the affidavit as though the omitted facts were included and then evaluate the presence of probable cause in light of the added facts."  State v. Lehnen, 403 So. 2d 683, 686 (La. 1981) (footnote omitted).  "[U]nless the omission is willful and calculated to conceal information that would indicate that there is not probable cause or would indicate that the source of other factual information in the affidavit is tainted, the omission will not change an otherwise good warrant into a bad one."  State v. Roubique, 421 So. 2d 859, 863 (La. 1982).

In this case, there is no evidence that Detective Whittington willfully omitted with an intent to deceive the fact that the confidential informant told him that Richardson hid drugs in the backyard.  Furthermore, had the omitted fact been included in the affidavit, it would have *bolstered* the probable cause determination.  Richardson has not shown that this issue was clearly stronger than those raised by his appellate counsel or that there is a reasonable probability that the appellate

---

[65] State Rec., Vol. 1 of 8, hearing transcript of January 12, 2018, at pp. 123-24.
[66] Id., at p. 63.
[67] Id., at p. 66.

court would have vacated or reversed the trial court judgment if only the proposed claim had been asserted.

Richardson next appears to claim that Detective Whittington admitted that police did not have a search warrant, and thus, his appellate counsel was ineffective for failing to argue on appeal that the search of his home was a warrantless intrusion. In support of this claim, Richardson isolates a portion of Detective Whittington's trial testimony as follows:

Q.        -- you had a search warrant?

A.        No, sir.[68]

It is clear from the record, when read in its entirety, that Detective Whittington testified that he believed that Richardson discarded drugs when he ran from his vehicle in to the home. His answer "No, sir," was in response to defense counsel's question whether he found any discarded drugs.[69] There is no doubt that the search of Richardson's residence and his car were pursuant to search warrants.[70] Appellate counsel is not ineffective for failing to raise a meritless claim. See Anderson v. Quarterman, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit. As such, failure to raise these issues did not prejudice Anderson."); Penson v. Ohio, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); Kossie v. Thaler, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the unasserted claims are stronger than those that were in fact raised).

---

[68] Rec. Doc. 1, at pp. 47-48 (citing trial transcript of April 18, 2018, at p. 85).
[69] State Rec., Vol. 2 of 8, trial transcript of April 18, 2018, at p. 85.
[70] State Rec., Vol. 8 of 8, search warrant dated November 12, 2016; search warrant dated November 12, 2016.

Richardson next claims that his appellate counsel was ineffective in failing to raise on appeal that Richardson's arrest was illegal and that his statement should have been suppressed as fruit of the poisonous tree.  He also claims that his statement was involuntary because he was handcuffed in the police car for three hours and police coerced him into making the statement by threatening to lock up his family.

Initially, the record reflects that Richardson had an outstanding attachment at the time of his arrest.[71]    Detective Whittington testified that Richardson was arrested pursuant to that attachment.[72]  Given the existence of the attachment, Detective Whittington had probable cause to arrest Richardson.  La. Code Crim. P. art 213(A)(4).  Richardson has simply not shown that claims that his arrest was illegal and his statement should have been suppressed as fruit of the poisonous tree were clearly stronger than the claims raised by appellate counsel.

As for Richardson's claim that his statements to Detective Whittington were made under duress, under Louisiana law, a statement it must be affirmatively shown that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.  La. Rev. Stat. § 15:451.  Furthermore, when an arrestee makes a statement made during custodial interrogation it must be shown that defendant was advised of his constitutional rights.  Miranda v. Arizona, 384 U.S. 436 (1966); State v. Lucky, 755 So.2d 845, 855 (La. 1999).  To determine the voluntariness of a confession, a court considers the totality of the circumstances in which the statement was made.  State v. Turner, 263 So. 3d 337, 399 (La. 2018).

---

[71] State Rec., Vol. 2 of 8, trial transcript of April 18, 2018, at p. 28.
[72] State Rec., Vol. 1 of 8, hearing transcript of January 12, 2018, at p. 90.

In this case, Detective Whittington testified that he read Richardson his <u>Miranda</u> rights while they were both inside the residence and that Richardson indicated that he understood those rights.[73] At that time, Richardson made the statement claiming ownership of anything found in the backyard.[74]  After making his initial statement, Richardson was removed from the residence and secured in the back of a unit.[75]  Detective Whittington testified that none of the other residents at the home were handcuffed or under investigation.[76]  Detective Whittington testified that he did not tell Richardson that he would detain or arrest other people in the residence.[77]  Several hours later, after Richardson was taken to the investigations bureau, he indicated that he wanted to make a statement.[78]  Detective Whittington again read him his <u>Miranda</u> rights and reviewed the rights of arrestee form with Richardson.[79]  Richardson indicated that he understood his rights and signed the form.[80]  Richardson then made a statement in which he again claimed ownership of the drugs and claimed that he was a habitual narcotics user.[81]

There is simply no evidence that Richardson did not understand his rights.  Further, there is no evidence that he was forced, threatened or otherwise induced to make a statement.  Rather, the evidence shows that he was twice read his <u>Miranda</u> rights and, on each occasion, acknowledged those rights, and made a statement.  As a result, Richardson fails to show his appellate counsel was ineffective in failing to raise the issue that his statements were made under duress or any resulting prejudice.

---

[73] <u>Id.</u>, at pp. 39-40, 93.
[74] <u>Id.</u>, at pp. 40, 94, 97.
[75] <u>Id.</u>, at p. 94.
[76] <u>Id.</u>, at p. 70.
[77] <u>Id.</u>, at pp. 96-97.
[78] <u>Id.</u>, at pp. 40, 67.
[79] <u>Id.</u>, at pp. 40-41.
[80] <u>Id.</u>, at pp. 41-42, 100-101, 103.
[81] <u>Id.</u>, at p. 42.

Finally, Richardson claims his appellate counsel was ineffective in failing to raise a violation of the knock-and-announce rule on appeal.  Notably, trial counsel did not assert violation of the knock-and-announce rule as basis for suppression of the evidence and Richardson's statement.   "Louisiana courts have long held a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress." State v. Montejo, 40 So. 3d 952, 967 (La. 2010); accord State v. Berroa-Reyes, 109 So. 3d 487, 496 (La. 5th Cir. 2013).  As trial counsel did not raise violation of the knock-and-announce rule as a basis for the motion to suppress, appellate counsel was not in a position to raise the claim on appeal.  Appellate counsel cannot be considered ineffective "in declining to raise an unreviewable issue."  Givens v. Cockrell, 265 F.3d 306, 310 (5th Cir. 2001); accord Weatherspoon v. Cockrell, Civ. Action No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011) ("[A]ppellate counsel was precluded from raising this claim because there had been no contemporaneous objection at trial.  Therefore, appellate counsel was not deficient for failing to raise the issue on appeal, and petitioner suffered no prejudice.  Accordingly, petitioner's instant claim fails because he cannot show a reasonable probability that he would have prevailed on appeal if the issue had been raised." (citations omitted)), adopted, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); Arceneaux v. Cain, Civ. Action No. 06-3964, 2009 WL 917429, at *10 (E.D. La. Mar. 31, 2009) ("Where appellate review of a claim would be barred due to the absence of a contemporaneous objection, appellate counsel is not ineffective for failing to assert the claim."); Taylor v. Holliday, Civ. Action No. 06–4118, 2008 WL 5146505, at *8 (E.D. La. Dec.4, 2008) (petitioner failed to demonstrate ineffective assistance of appellate counsel when issue was not preserved for appeal).

In summary, Richardson fails to show that the state court's denial of relief on these issues was contrary to or an unreasonable application of <u>Strickland</u>. He is not entitled to relief on this claim.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Eric Richardson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>see</u> <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 24th day of August, 2022.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**